IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONALD R. FRENCH, *et al.*,           )      CASE NO.  1:16 CV 1777
                                      )
        Plaintiffs,                   )      JUDGE DONALD C. NUGENT
                                      )
v.                                    )
                                      )      **MEMORANDUM OPINION AND**
A. W. CHESTERTON COMPANY, *et al.*,   )      **ORDER**
                                      )
        Defendants.                   )

This matter is before the Court on Plaintiffs' Motion to Remand this action to the Court

of Common Pleas for Cuyahoga County, Ohio. (ECF #167). Defendants General Electric

Company ("GE") and CBS Corporation ("Westinghouse")[1] removed this action pursuant to 28

U.S.C. § 1442(a)(1).  Plaintiffs Donald French and his wife, Charlene French, have moved to

remand the action to state court. Defendants have filed an opposition and Plaintiffs have filed a

reply brief in support.  Counsel for Plaintiffs and removing Defendants GE and Westinghouse

participated in oral argument before the Court on October 12, 2016. Following argument, the

Court granted the parties leave to file supplemental briefs, if desired. No supplemental briefs

were filed. The motion to remand is now fully briefed and ready for decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on December 1, 2015, against multiple defendants including

the removing defendants GE and Westinghouse. The Complaint states that Donald French was

exposed to the Defendants' asbestos and asbestos-containing materials by virtue of working with

or around asbestos and asbestos-containing materials, and that such exposures were substantial

---

[1]CBS Corporation (a Delaware corporation)  is a successor by merger to CBS
Corporation, a Pennsylvania corporation f/k/a Westinghouse Electric Corporation.

factors which directly and proximately caused him to develop mesothelioma. (Compl. ¶ 6, ECF #2, Ex.A) Plaintiffs filed an Amended Complaint adding additional defendants on May 2, 2016. (ECF #2, Ex.B) The Amended Complaint asserts the following eight claims against all of the defendants: negligence (failure to warn), strict liability (design defect), breach of express warranty, breach of implied warranty, statutory products liability under Ohio R.C. § 2307.71, punitive damages and loss of consortium. Neither complaint provides any details concerning any specific product manufactured or supplied by GE or Westinghouse to which Mr. French was allegedly exposed or identifies any specific site(s) at which Mr. French encountered the Defendants' products.

The removing Defendants state that they first learned that this case was removable on June 13, 2016 when Mr. French was deposed. At his Deposition Mr. French testified that beginning in 1965 he was a machinist's mate aboard the U.S.S. Forrestal and his primary duty station was in the Forrestal's Number 2 main engine room. He further testified that either GE or Westinghouse manufactured the turbine located in that compartment. GE and Westinghouse removed the action on July 12, 2016, within 30 days of that deposition as required by 28 U.S.C. § 1446(b)(3). Plaintiffs assert that Defendants should have been aware that the case may have been removable on May 31, 2016, when Plaintiffs submitted written discovery responses which indicated that Mr. French had served as a machinist's mate aboard the Forrestal and was exposed to asbestos on that ship. The discovery responses did not identify GE or Westinghouse as a supplier of any equipment aboard the Forrestal.

Defendants assert that this case was removable because GE and Westinghouse–in all relevant aspects of their design, manufacture, and supply of any Navy turbine(s) aboard the

Forrestal, and of any warning or other written materials to be supplied therewith–were acting under the direction of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1).

Plaintiffs filed their Motion to Remand on August 12, 2016, asserting that the removing Defendants do not meet the requirements for jurisdiction under 28 U.S.C. § 1442(a)(1) and that in any event, the removal was untimely in that it was outside the 30 day time restriction of 28 U.S.C. § 1446(b)(3).

## STANDARD OF REVIEW

28 U.S.C. § 1442(a)(1), known as the federal officer removal statute, permits "any officer ... of the United States or ... person acting under" them to remove actions "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The authorization by Congress of removal under 28 U.S.C. § 1442(a)(1) is "meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny,* 451 U.S. 232, 241 (1981). Removal of the action, along with the federal-law defense, from state court to federal court "enables the defendant to have the validity of his immunity defense adjudicated, in a federal forum ." *Id.* (citing *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). While the party seeking removal bears the burden of proving the grounds for its motion, the Supreme Court has long warned that "[t]he federal officer removal statute is not 'narrow' or 'limited." ' *Willingham,* 395 U.S. at 406 (citing *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)). Rather, "the right of removal is absolute for conduct performed under color of federal office, and [the Supreme Court] has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging

interpretation of § 1442(a)(1)." ' *Manypenny,* 451 U.S. at 241 (quoting *Willingham,* 395 U.S. at 407).

To establish removal jurisdiction under the federal officer removal statute, a defendant must show that it was a (1) "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's "acting under" the United States, its agencies, or its officers, (3) there is a causal nexus between the claims and the conduct performed under color of federal office; and (4) defendant raises a colorable federal defense to plaintiff's claim. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3rd Cir. 1998) (citing *Mesa v. California*, 489 U.S. 121, 129 (1989). The requirement that the asserted federal defense need only be "colorable" rather than successful, advances Congress's desire to have federal defenses litigated in federal forums. At this stage, the district court is concerned only with "who makes the ultimate determination, not what that determination will be." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012) If a defendant has a colorable federal defense to any of the claims raised by the plaintiff, the entire case is removable. *Id*.

## ANALYSIS

Plaintiffs move to remand on two grounds. First that the removal was untimely under 28 U.S.C. § 1446(b)(3); and secondly, that the removing Defendants have not established all of the elements necessary for federal officer removal under 28 U.S.C. §1442(a)(1). The Court will address these concerns in reverse order.

## 1. Federal Officer Removal Requirements

Plaintiffs assert that the removing Defendants have not established the last three elements of the federal officer removal statute's four elements. Specifically, Plaintiffs contend that the

Defendants have not demonstrated the "acting under," causal nexus, or colorable federal defense elements required for removal under 28 U.S.C. § 1442(a)(1).

Moving first to the "acting under" element, the Supreme Court has stated that the words "acting under" are broad but not limitless and that the statute must be liberally construed. *Watson v. Philip Morris Companies, Inc*., 551 U.S. 142, 147 (2007). In *Watson*, after reviewing the history of the statute and its historical applications, the Court concluded that the "under" portion refers to a relationship that involves "subjection, guidance, or control" and that "'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id*. at 151-152. The Court rejected the defendant cigarette manufacturer's argument that it acted under the federal government because it was subjected to heavy regulation stating that "the help or assistance necessary to bring a private person within the scope of the statue does *not* include simply *complying* with the law." *Id.* at 152. (Emphasis in original) The Court distinguished the facts in *Watson* from those of other lower federal court cases that held that "Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring or supervision." *Id.* at 153 (citing *Winters v. Diamond Shamrock Chemical Company*, 149 F.3d 387 (5th Cir. 1998). The Court explained that unlike the cigarette manufacturer in *Watson*, the private contractors who satisfy the "acting under" requirement are "helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Watson*, 551 U.S. at 153-54. In *Winters*, Dow Chemical provided the Government with a product (Agent Orange) that it used to help

conduct a war. Thus, the private contractor performed a job that in the absence of a contract, the Government itself would have had to perform. *Watson*, 551 U.S. at 154-155. Using this line of reasoning, the Seventh Circuit found that government supplier/contractor CBS (Westinghouse), which had supplied turbines containing asbestos to the Navy, "worked hand-in-hand with the government, assisting the federal government in building warships" thus meeting the "acting under" requirement of 28 U.S.C. § 1442(a)(1). *Ruppel, supra* 701 F.3d at 1181. *See also Bennett v. MIS Corp*., 607 F.3d 1076, 1088-89 (6th Cir. 2010)(federal contractor who performed mold remediation under contract with FAA under close supervision and regulation met "acting under" element.)

In this case, GE and Westinghouse have submitted the Declaration of David Hobson, a GE employee from 1969 through 1996, which details the close collaboration, monitoring and control of the Navy in the design, manufacturing and testing of turbines used in Navy ships. In addition, Defendants submit the affidavit of Admiral Ben J. Lehman, a former Rear Admiral in the United States Navy, who describes the strict control and supervision the Navy and its officers have over all aspects of the design and manufacture of equipment intended for installation on Navy vessels.  Also provided is the Affidavit of retired Rear Admiral Roger B. Horne, Jr, who was engaged in Navy ship building and design at the time that the ship at issue here, the Forrestal, was built. Admiral Horne states that the Navy created Military specifications or MilSpecs for each piece of equipment such as the turbines. The Navy submitted the MilSpecs to the contractor-Westinghouse or GE-asking the company to incorporate the MilSpecs into its own detailed design, which would then be reviewed and approved by Navy officers. Further, the MilSpecs required the use of asbestos gaskets and insulation with all Navy propulsion turbines at

the time of the Forrestal's construction. The evidence submitted by GE and Westinghouse demonstrates that the companies were working "hand in hand with the Navy to build warships" and thus were "acting under" a federal officer for purposes of § 1442(a)(1) in their design and manufacture of Navy turbines.

Next, Plaintiffs assert that Defendants cannot establish a causal nexus between their actions under the control of a federal officer and the Plaintiffs' claims. Specifically, there must be a "causal connection between the charged conduct and the asserted official authority." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). Defendants may satisfy this requirement if their relationship with Plaintiff "derived solely from their official duties" for the Navy. See *Ruppel*, 701 F.3d at 1181. In *Ruppel* the Court found that Westinghouse acted under the Navy by installing asbestos, which duty gave rise to Ruppel's complaint (for design defect and failure to warn). As such the Court concluded that the gravamen of Ruppel's complaint occurred while Westinghouse acted under color of federal authority. *Id.* As in *Ruppel*, the evidence submitted by GE and Westinghouse demonstrates that the Defendants' designed, manufactured and installed turbines in Navy ships under close directions and supervision of Navy officers and that the Navy either directed the use of asbestos with the turbines, or at the very least knowingly approved all uses of asbestos with the turbines. Consequently, there is a causal nexus between the Navy's directions and the Plaintiffs' claims.

Finally, Plaintiffs contend that Defendants' assertion of the government contractor defense is not colorable. Specifically, Plaintiffs assert that Defendants have failed to prove that all aspects of the design of their turbine engines were controlled by the Navy or provide evidence that they warned the United States of the hazards of asbestos or alternatively, that the Navy had a

7

policy that would have conflicted with manufacturer asbestos warnings.

The government contractor defense is based upon the Supreme Court's recognition that "state law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). When the government has exercised its discretion and approves designs prepared by private contractors, it has an interest in insulating its contractors from liability for such design defects. Thus, the Supreme Court determined that government contractors are immune from state law liability for design defects in military equipment when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* While third element ensures that the manufacturer does not withhold useful safety information, the first two elements capture the government's discretion in the design, ensuring that the design feature in question was considered by a Government officer and not merely by the contractor itself. *Id.*; *Tate v. Boeing Helicopters*, 55 F3d 1150, 1156 (6th Cir. 1995)(government's approval must transcend rubber stamping as government exercises no discretion when it approves a design without scrutiny.) Again, as noted above, at the motion to remand stage, the removing Defendants "need not prove the asserted [federal] defense, but need only articulate its 'colorable' applicability to [Plaintiffs'] claims." *Winters*, 149 F.3d at 400.

The affidavits and MillSpecs submitted by GE and Westinghouse offer sufficient evidence to support a colorable federal defense. GE produced the affidavits or declarations of retired GE turbine engineers David Skinner and David Hobson, retired Navy admiral Ben

Lehman and retired Navy captain Lawrence Betts and Westinghouse produced the affidavit of retired Rear Admiral Roger B. Horne, Jr. These unrebutted affidavits show that the Navy controlled and supervised all aspects of the design and manufacture of the steam turbines supplied by both GE and Westinghouse. Further, the affidavits assert that the heat insulation materials (asbestos) were supplied (by other suppliers) and installed pursuant to military specifications that were part of separate government contracts between the Navy and its shipbuilders. The affidavits also show that the Navy's control extended to all writings (e.g., stenciling, identification plates and manuals) associated with steam turbines, such that neither GE nor Westinghouse could supply any warnings that were not specifically authorized or approved by the Navy without being out of compliance with its government contracts. Finally, the affidavits detail the Navy's knowledge of the risks associated with asbestos at the time in question here and support the Defendants' position that there were no asbestos-related dangers known to GE or Westinghouse that were not also known by the Navy. Accordingly, the Court finds that GE and Westinghouse have produced sufficient evidence to establish a colorable federal contractor defense for Plaintiffs' design defect claims and to permit removal under 28 U.S.C. § 1442(a)(1).

Having determined that removal jurisdiction exists in this Court as to Plaintiffs' design defect claim, it is unnecessary to determine whether Plaintiffs' failure to warn claim also falls within § 1442(a)(1). *National Audubon Soc'y v. Department of Water & Power*, 496 F.Supp. 499, 507 and 509 (E.D. Cal. 1980)(if one claim cognizable under [§ 1442(a)(1)] is present, the entire action is removed); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084, n.7 (6th Cir. 2010); *Ruppel*, 701 F.3d at 1182.

9

**2. Timeliness**

Plaintiffs argue that the date on which GE and Westinghouse could have ascertained that the case could be removed was May 31, 2016 not June 16, 2016, thus removal on July 12, 2016 was untimely under § 1446(b)(3). 28 U.S.C. § 1446(b)(3) provides in relevant part:

> if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Plaintiffs argue that the information served on Defendants on May 31, 2016, stating that Mr. French was in the Navy from May 5, 1956 to June 10, 1968, held the rank of E-4, completed MMA School (Phase I Basic) and Phase IIb) and was exposed to asbestos on the USS Forrestal CVA 59 was sufficient information for GE and Westinghouse to search their own records to ascertain if either had supplied a product that was installed on the Forrestal that Mr. French would have encountered. Plaintiffs acknowledge that the information served on May 31, 2016, did not state what equipment, if any, on the Forrestal was supplied by GE or Westinghouse, or where on the ship Mr. French would have had contact with any GE or Westinghouse product. Essentially Plaintiffs assert that the information supplied on May 31, 2016 triggered an obligation on the part of Defendants to search their records to determine if GE or Westinghouse supplied equipment installed on the Forrestal in the time period at issue. In support of this proposition, Plaintiffs cite deposition testimony in another case where a Westinghouse employee, after 20 days of searching, was able to find company records regarding Westinghouse equipment installed on the Navy ship at issue in that case. In any event, the information given by Plaintiffs on May 31, 2016 did not, by itself, show that the case was removable.

Plaintiffs point to the Sixth Circuit's decision in on *Holston v. Carolina Freight Carriers Corp.,* No. 90–1358, 1991 WL 112809 (6th Cir. June 26, 1991), as establishing the standard for determining when the thirty-day removal period begins to run if a removable claim is not clearly shown in a plaintiff's own papers. Rejecting other federal circuit court interpretations of §1446(b) holding that the information establishing removal must come from a source outside of the defendant's control, the *Holston* court held that the thirty-day period begins "running from the date that a defendant has solid and unambiguous information that the case is removable, even if that information is solely within [the defendant's] own possession." *Id.* at *3. The Court grounded its holding in the principle that courts are to construe removal statutes "strictly" and ambiguities "must be resolved in the favor of remand to the state courts." *Id*. The Court recognized the difficulty in ascertaining when a defendant has "solid and unambiguous information" noting that even if a defendant "may have the papers in its possession as of the filing of the suit," a defendant "does not receive notice of the facts contained therein until it reviews those papers in connection with the suit." *Id*.

The Sixth Circuit declined to extend its holding in *Holston*, that the 30 day removal period could be triggered by information in the defendant's possession separate from any paper furnished by the plaintiff, to removal under the CAFA. *Graiser v. Visionworks of America, Inc*., 819 F.3d 277 (2016). The Court stated that its ruling in *Holston* was based on the strict scrutiny standard of review favoring remand that applies to most removals. However, there is no antiremoval presumption in cases invoking CAFA, thus the reasoning underlying *Holston's* holding is not applicable. *Id.* at 283. Thus, the Court held that in CAFA cases, "the thirty-day clocks of §1446(b) begin to run only when the defendant receives a document *from the plaintiff*

from which the defendant can unambiguously ascertain CAFA jurisdiction. Under this bright-line rule, a defendant is not required to search its own business records or 'perform an independent investigation into a plaintiff's indeterminate allegations to determine removability.'" *Graiser, 819 F.3d* at 285 (emphasis in original, citation omitted.)

While *Graiser* applies to CAFA cases, the rationale is equally applicable in federal officer removal cases because, like CAFA removals, the strict scrutiny standard of review favoring remand does not apply to federal officer removal. *Willingham*, 395 U.S. at 406. Under the *Graiser* bright line test, the defendant is not required to search its own business records or conduct an independent investigation to determine removability. The removal period is triggered by some "paper" tendered by the plaintiff revealing a removable claim. In this case Mr. French's deposition on June 16, 2016 triggered the 30 day removal period.  As such, Defendants' removal was timely.

However, even if *Graiser* does not apply to federal officer removal, there is no evidence that GE or Westinghouse should have, or actually did, discover the case was removable through a search of their own records sooner than June 16, 2016. The earliest that Plaintiffs assert that Defendants had enough information to begin a search was on May 31, 2016. The deposition testimony cited by Plaintiffs indicated that it took a Westinghouse employee 20 days to find records relating to Westinghouse equipment on the ship at issue there. Twenty days in this case would put the triggering date at June 20, 2016, after Mr. French's deposition. There is no evidence that GE or Westinghouse had (or should have had)  "solid and unambiguous information" from papers in their own possession prior to June 16, 2016. Accordingly, the Court finds that Defendants' removal in this matter occurred within the time requirements of

§ 1446(b)(3).

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand (ECF #167) is denied.

IT IS SO ORDERED.


_/s/Donald C. Nugent_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATED:__November 10, 2016_____

13